**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

|   |   |   |
|---|---|---|
| **KELLY MATICH,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:22-cv-697** |
| | : | |
| **v.** | : | **(JUDGE MANNION)** |
| | : | |
| **GINA MARIE BERUMEN O'BRIEN, TRISIA SEPULVEDA, and CHRISTINA BERUMEN,** | : | |
| | : | |
| **Defendants** | : | |
| | : | |

**<u>MEMORANDUM</u>**

This diversity action involves claims of defamation, intentional infliction of emotional distress, invasion of privacy, and more. These arise from a series of interpersonal offenses allegedly conducted through email and social media channels. The court considers Defendants' motion to dismiss Plaintiff's Amended Complaint.


**I.     BACKGROUND**

At the motion to dismiss stage, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016).

Defendant Gina Marie Berumen O'Brien was divorced from one George O'Brien on December 1, 2021. Plaintiff Kelly Matich is now in a romantic relationship with Mr. O'Brien.[1] On December 4, Defendant O'Brien posted to Facebook two photographs, which had been taken by Mr. O'Brien and were undeveloped in his camera, showing Plaintiff and Mr. O'Brien "naked on the upper part of their bodies." (Doc. 23 ¶¶14–18). On December 23, Defendant O'Brien emailed the photo to "the top 30 employees in the Houston corporate office" of Plaintiff's employer, which also employs Mr. O'Brien. (Id. ¶20).

Defendant O'Brien created a Linkedin profile under Plaintiff's name and image, with the title "Homewrecker" and listing Plaintiff's employer. (Doc. 1-1). The profile posted: "I've been having an affair with my coworker while on business trips …" (Doc. 23 ¶51). Under a post by Plaintiff's employer, this profile commented:

> I love working for this company. You have given me the opportunity to travel this year and found the love of my life while on these trips. We started an affair while we were working on company time and money. He has finally left his family for me

---

[1] The Amended Complaint does not specify when Plaintiff's and Mr. O'Brien's relationship began.

and we are so happy together. Thanks to this company I was able to find this man that i love so much …

(Doc. 1-2).

Defendant O'Brien posted to her own Facebook page screenshots of text messages sent by Plaintiff telling O'Brien to "[s]top posting my name on your page or else I will get a lawyer." (Doc. 1-3). Along with the screenshots O'Brien wrote:

Just out of the blue!! I have no idea what she is talking about but you do u boo!! Come at me!! Now I got new stuff to post. If you don't want your shit on my page, stop texting me, bitch!!

(Doc. 1-3).

In another post she wrote "Hell hath no fury like a woman scorned." (Doc. 23 ¶31).

Plaintiff's boss asked her about the Linkedin posts, she received a written warning about the photographs, and has not received a pay raise or promotion since they were sent.

Defendant Sepulveda sent Plaintiff a message on Instagram in which she insulted Plaintiff and stated: "Just know if anything goes wrong with my sister I will fly my ass out … and handle your bitch ass. I do know where you live. Haha .. Thank god for my detective bro in law" (Doc. 1-5).[2]

---

[2] Plaintiff alleges that Defendant Sepulveda "posted" this message to Instagram, (Doc. 23 ¶40), but Plaintiff's Exhibit 6 demonstrates that this was a direct message. (Doc. 1-5).

The Amended Complaint brings seven counts: (I) Defamation, (II) Intentional Infliction of Emotional Distress, (III) Invasion of Privacy, (IV) Defamation by Innuendo, (V) Identity Theft, (VI) Invasion of Privacy, and (VII) Intentional Interference with Contractual Relations. Counts II, III, and VII are brought against all Defendants. Counts I, IV, V, and VI are brought against Defendant O'Brien only.

## II.    JURISDICTION

Plaintiff asserts that subject-matter jurisdiction exists pursuant to 28 U.S.C. §1331. It does not, because this action does not "arise[] under the Constitution, laws, or treaties of the United States," §1331; Plaintiff brings only state-law claims. She also asserts that jurisdiction exists by way of §1343(a)(4). This is also incorrect, because Plaintiff does not seek relief "under any Act of Congress providing for the protection of civil rights." §1343(a)(4).

Plaintiff alternatively asserts that jurisdiction exists pursuant to 28 U.S.C. §1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000. Because Plaintiff is a resident of Pennsylvania, Defendants do not dispute the allegation that they are citizens of Texas and California, and it does not "appear to a legal certainty that the

claim is really for less than the jurisdictional amount," *Auto Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016), the court may at this stage exercise subject-matter jurisdiction pursuant to §1332.

### III.   LEGAL STANDARD

In response to a complaint, a party may move for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, a complaint must make more than "conclusory or 'bare-bones' allegations," and "'threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, the complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

In considering the complaint, the court must apply a "two-part analysis." *Id.* "First," the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210–11. "Second," the court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim to relief." *Id.* at 211.

## IV.   DISCUSSION

Plaintiff's claims arise under state law, and the parties agree that Pennsylvania substantive law applies.

Before considering Plaintiff's individual claims, the court first notes that she has made no specific allegations against Defendant Christina Berumen. She only alleges generally that she "received numerous texts and harassment from … Berumen," that "Defendant [O'Brien] has corralled her relatives, Christina Berumen and Trisia Sepulveda to assist in the harassment," and that "O'Brien further spread the defamatory statements by inducing … Christina Berumen … to join in harassing Plaintiff with defamatory statements and threats." (Doc. 23 ¶¶19, 38, 89). Plaintiff cannot proceed with an action against Defendant Berumen based on conclusory assertions that she has participated in harassment and defamation. This type of pleading does not "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Therefore, Plaintiff's claims against Defendant Berumen will be dismissed.

### a.  Count I – Defamation (Defendant O'Brien only)

A defamation's plaintiff's burden has been codified by the General Assembly: she must prove "(1) [t]he defamatory character of the

communication[;] (2) [i]ts publication by the defendant[;] (3) [i]ts application to the plaintiff[;] (4) [t]he understanding by the recipient of its defamatory meaning[;] (5) [t]he understanding by the recipient of it as intended to be applied to the plaintiff[;] (6) [s]pecial harm resulting to the plaintiff from its publication[;] [and] (7) [a]buse of a conditionally privileged occasion." 42 Pa. Cons. Stat. §8343(a); *Joseph v. Scranton Times L.P.*, 129 A.3d 404, 424 (Pa. 2015). A defendant may successfully defend against a defamation claim by proving "[t]he truth of the defamatory communication." §8343(b)(1); *Joseph*, 129 A.3d at 424.

A defamatory statement is one that "tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him," or "ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his proper business, trade, or profession." *Krajewski v. Gusoff*, 53 A.3d 793, 802 (Pa. Super. Ct. 2012) (quoting *Maier v. Maretti*, 671 A.2d 701, 704 (Pa. Super. Ct. 1995)).

Defendants assert that Plaintiff has not pointed to specific defamatory statements and has not alleged to whom, where, or when the statements were provided. (Doc. 26 at 10). They also assert that the fact that "Plaintiff engaged in an extramarital relationship with a coworker" is true. (Id.).

- 7 -

As to the who, where, and when, the Amended Complaint does specify that certain statements were posted on specified dates to social media sites for the public to see. (Doc. 23 ¶¶24–29). Plaintiff in her brief asserts that the following constitute "falsehoods":

- Plaintiff knew her relationship was immoral, improper, and violated a marital norm.
- The only reason she remained with her employer was to further her relationship with O'Brien, on company time and at company expense.
- Plaintiff had deliberately set out to wreck the O'Briens' marriage.
- She had her used [sic] company to "find the love of my life."
- Her employer deserved praise for having enabled her to have this "affair" and "find this man I love so much."

(Doc. 31 at 12–13).

She further contends that "Defendant O'Brien deliberately used the word 'affair' throughout the phony LinkedIn posts to invoke images of a salacious, clandestine and sexualized relationship conducted in the shadows." (Id. at 13). She also describes the fake LinkedIn profile's "Homewrecker" job title as a falsehood. (Id.).

The characterizations of Plaintiff's relationship as immoral, improper, and violative of marital norms, the description of Plaintiff as a "Homewrecker," inferences about her motivations, and the notion that her employer deserved praise are not alleged to have been directly stated by

Defendant O'Brien. Even if they were, they are opinions, not facts whose falsity is ascertainable.

"A statement in the form of an opinion is actionable only if it may reasonably be understood to imply the existence of *undisclosed* defamatory facts justifying the opinion." *Kuwait v. Gulf Link Transport Co. v. Doe*, 216 A.3d 1074, 1086 (Pa. Super. Ct. 2019). The obvious factual implication of the alleged statements here is that Plaintiff engaged in a romantic relationship with a married man.

While the Amended Complaint does not directly allege that Plaintiff's relationship with Mr. O'Brien began while he was still married, Plaintiff's brief can only be understood as admitting such. She argues as follows:

> Defendants erroneously construe the defamatory statements to be that 'Plaintiff engaged in an extramarital affair with the Plaintiff' [sic].
> Defendants seem to believe that because it is true that George O'Brien left his marriage to be with Plaintiff, whatever verbal abuse Defendants inflicted on Plaintiff was justified by the *truthful fact that she had become involved with a married man who subsequently divorced his wife.*
> Plaintiff readily admits that Plaintiff and her fellow employee George O'Brien were involved in what became a loving relationship, and further admits that on December 1, 2021, George and Gina Marie Berumen O'Brien were divorced.
> It is true that society may look askance at the spouse who ends a marriage to be with a different partner. It is equally true, however, that leaving a spouse for another person is not illegal and not an uncommon occurrence in our society.
> Such conduct may bring down social opprobrium on the new couple. Beyond opprobrium, however, our social norms,

laws and courts do not tolerate conduct that goes beyond opprobrium to the baseless defamation of another person.

(Doc. 31 at 10–11) (emphasis added).

Because Plaintiff admits that she engaged in an extramarital relationship, this implied factual basis is true.

But, because the profile allegedly used Plaintiff's name and picture, the LinkedIn posts imply another fact: that Plaintiff made them. And Plaintiff has alleged that they were actually made by Defendant O'Brien, not her. The implication that Plaintiff would make these types of posts on her employer's public Linkedin page is one that tends to harm her reputation. The posts use Plaintiff's name, so they clearly apply to Plaintiff and would be understood by recipients as defamatory and applying to Plaintiff. And Plaintiff has alleged that she has sustained harm from the publication of these posts. Therefore, Plaintiff has stated a claim for defamation based on the alleged assertion by Defendant O'Brien that Plaintiff made the LinkedIn posts.

### b. Count II – Intentional Infliction of Emotional Distress (all Defendants)

A claim of intentional infliction of emotional distress requires the following elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Jordan v. Pa. State Univ.*, 276

A.3d 751, 775 (Pa. Super. Ct. 2022). "[T]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998).

The Amended Complaint alleges that Defendant O'Brien emailed the partially nude photographs of Plaintiff and Mr. O'Brien to "the top 30 people in the Houston corporate office" of Plaintiff's employer, and that Defendants' conduct caused her depression, anxiety, isolation, and insomnia. (Doc. 23 ¶¶20, 62). Accepting these facts as true, and viewing them in the light most favorable to Plaintiff, the court concludes that Plaintiff has stated a claim for intentional infliction of emotional distress against Defendant O'Brien. Such conduct is extreme and outrageous, and has allegedly caused Plaintiff severe emotional distress.

The Complaint also alleges that Defendant Sepulveda sent Plaintiff a message which included the following: "Just so you know if anything goes wrong with my sister I will fly my ass out from Los Angeles and handle your bitch ass. I do know where you live. Haha .. Thank god for my detective bro in law" (Doc. 1-5). The court concludes that this type of threatening message, which included the assertion that "I … know where you live," constitutes

extreme and outrageous conduct. Plaintiff has therefore stated a claim for intentional infliction of emotional distress against Defendant Sepulveda.

Count II will thus be dismissed only as it relates to Defendant Berumen; it will not be dismissed as against Defendants O'Brien and Sepulveda.

### c. Count III – False Light Invasion of Privacy (all Defendants)

The tort of false light invasion of privacy "imposes liability on a person who publishes material that 'is not true, is highly offensive to a reasonable person, and is publicized with knowledge or in reckless disregard of its falsity.'" *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (quoting *Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1188 (1988) (en banc)). Falsity can be shown where "a defendant 'selectively printed or broadcast true statements or pictures in a manner which created a false impression.'" *Id.* (quoting *Larsen*, 543 A.2d at 1189); *see also Santillo v. Reedel*, 634 A.2d 264, 267 (Pa. Super. Ct. 1993) ("[A] false light claim can be established where true information is released if the information tends to imply falsehoods.").

As discussed *supra* Section III.a., the posts by the LinkedIn profile allegedly made by Defendant O'Brien created the false impression that Plaintiff posted them. And the impression that Plaintiff made such posts publicly and on her company's LinkedIn page would be highly offensive to

Plaintiff. Plaintiff has stated a false light invasion of privacy claim against Defendant O'Brien.

There is no allegation that Defendant Sepulveda publicized anything about Plaintiff; only that she sent her a message. Count III will therefore be dismissed as against Defendants Sepulveda and Berumen, but not dismissed as against Defendant O'Brien.

### d. Count IV – Defamation by Innuendo (Defendant O'Brien)

"To establish defamation by innuendo, the innuendo must be warranted, justified, and supported by the publication." *Am. Osteopathic Assoc. v. Am. Bd. of Internal Med.*, 555 F. Supp. 3d 142, 153 (E.D. Pa. 2021) (quoting *ToDay's Housing v. Times Shamrock Commc'ns*, 21 A.3d 1209, 1215 (Pa. Super. Ct. 2011)).

As discussed, the innuendo that Plaintiff made the LinkedIn posts was warranted, justified, and supported by the publication because the profile used her name and image. And the notion that Plaintiff made those posts is defamatory. Therefore, Plaintiff has stated a claim for defamation by innuendo against Defendant O'Brien, and Count IV will not be dismissed.

### e. Count V – Identity Theft (Defendant O'Brien)

Plaintiff submits that her identity theft claim rests on both common law and statutory grounds.

- 13 -

### 1. Common law identity theft

For common law support, Plaintiff appeals to the "right of publicity" recognized by some courts. *Rose v. Triple Crown Nutrition, Inc.*, 2007 WL 707348, at *2–3 (M.D. Pa. 2007) (collecting cases). Under this tort theory, "[a] defendant violates a plaintiff's right of publicity by 'appropriating its valuable name or likeness, without authorization, and using it to defendant's commercial advantage." *Id.* at *3 (quoting *World Wrestling Fed'n Ent. v. Big Dog Holdings, Inc.*, 280 F. Supp. 2d 413, 443–44 (W.D. Pa. 2003)).

There is no allegation that Defendant O'Brien acted for her own commercial advantage. Therefore, Plaintiff has not stated a claim under this theory of liability.

### 2. Statutory identity theft

Pennsylvania provides for a private civil action for damages based on identity theft as defined by the criminal statute 18 Pa. Cons. Stat. §4120. 42 Pa. Cons. Stat. §8315; *Switzer v. Franklin Inv. Corp.*, No. 1:22-CV-208, 2023 WL 2313482, at *3 (W.D. Pa. 2023) ("Pennsylvania provides a private right of action for victims of identity theft."); *Gabriel v. Giant Eagle, Inc.*, 124 F. Supp. 3d 550, 566 (W.D. Pa. 2015).

The crime of identity theft is defined as follows: "A person commits the offense of identity theft of another person if he possesses or uses, through

any means, identifying information of another person without the consent of that other person to further any unlawful purpose." 42 Pa. Cons. Stat. §4120(a).[3]

Plaintiff alleges that Defendant O'Brien used identifying information—Plaintiff's name and picture—to create a LinkedIn profile and post publicly on Plaintiff's company's page for the unlawful purpose of defaming her. Viewing these specific allegations in the light most favorable to Plaintiff, the court concludes that she has stated a claim under this provision. Count V will therefore not be dismissed.

### f. Count VI – Invasion of Privacy (Defendant O'Brien)

Plaintiff claims that Defendant O'Brien committed the tort of invasion of privacy by sending private photographs to the "top 30 decisionmakers at the corporate headquarters" of Plaintiff's employer. (Doc. 23 ¶116). In her brief, she specifies that this claim is brought pursuant to the theory of intrusion upon seclusion. (Doc. 31 at 26).

"To state a cause of action for the invasion of privacy in Pennsylvania, a plaintiff must aver that there was an intentional intrusion on the seclusion of their private concerns which was substantial and highly offensive to a

---

[3] Identifying information means "[a]ny document, photograph, pictorial or computer image of another person, or any fact used to establish identity, including, but not limited to, a name …." 42 Pa. Cons. Stat. §4120(f).

reasonable person, and aver sufficient facts to establish that the information disclosed would have caused mental suffering, shame or humiliation to a person of ordinary sensibilities." *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 248 (Pa. 2002).

The Complaint alleges that Defendant O'Brien emailed photographs which depicted Plaintiff and Mr. O'Brien partially naked to "the top 30 people in the Houston corporate office" of Plaintiff's employer. (Doc. 23 ¶¶14–20). As alleged, these photographs were plausibly private because they were taken by Mr. O'Brien and were undeveloped in his camera. And this type of intrusion, in which decision-making employees at Plaintiff's employer were allegedly sent photographs of her partially naked with another employee, is a substantial and highly offensive one which would likely cause humiliation to a person of ordinary sensibilities. Therefore, the court concludes that Plaintiff has stated an invasion of privacy claim for intrusion upon seclusion. Count VI will not be dismissed.

### g. Count VII – Intentional Interference with Contractual Relations (all Defendants)

The Amended Complaint asserts that "[b]y referencing the Plaintiff as wasting her employer's time and money and by sending indecent photographs of the Plaintiff to Plaintiff's employer, Defendants intentionally

interfered with Plaintiff's contractual relationship with her employer." (Doc. 23 at ¶123).

"Under Pennsylvania law, to prevail on a claim for tortious interference with existing or prospective contractual relationships, a party must prove: (1) the existence of a contractual or prospective contractual relationships; (2) purposeful action by the defendant specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) [and] legal damage to the plaintiff as a result of the defendant's conduct." *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009).

As to the first element, Plaintiff has alleged that she was employed by the company whose LinkedIn page was commented on. (Doc. 23 ¶¶20, 25, 27; Doc. 1-2). As to the second, based on the facts alleged, the reasonable inference may be drawn that Defendant O'Brien made these posts for the purpose of harming Plaintiff's contractual relationship with her company. She would have known that harm to that relationship would likely result from such posts, and no alternative purpose for such conduct is apparent from the face of the Complaint. There is no suggestion of privilege or justification, and Plaintiff has alleged that she was damaged as a result of this conduct because she received a written warning and has not received a raise or

promotion since the posts were made. (Doc. 23 ¶¶36–37). Therefore, Plaintiff has stated a claim against Defendant O'Brien under Count VII.

No allegations are made against Defendant Sepulveda that relate to Plaintiff's employer. So this count fails to state a claim against Defendant Sepulveda.

Count VII will be dismissed as against Defendants Sepulveda and Berumen, but not dismissed as against Defendant O'Brien.

## V.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss will be granted in part and denied in part. Plaintiff's claims against Defendant Berumen will be dismissed. Except for Count II, Plaintiff's claims against Defendant Sepulveda will be dismissed. With regard to Count II against Defendant Sepulveda, and all counts against Defendant O'Brien, Defendants' motion to dismiss will be denied. An appropriate order will follow.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: February 14, 2024**
22-697-01

- 18 -