**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KELLY MATICH,<br><br>Plaintiff,<br><br>v.<br><br>GINA MARIE BERUMEN O'BRIEN, et al.,<br><br>Defendants. | CIVIL ACTION NO. 3:22-cv-00697<br><br>(SAPORITO, J.) |

## MEMORANDUM

This diversity action involves claims of defamation, intentional infliction of emotional distress, invasion of privacy, and other state-law torts. At the center of these claims is a non-party, George O'Brien ("George"), and his personal relationships with the plaintiff and the lead defendant. Until December 1, 2021, George was married to defendant Gina Marie Berumen O'Brien. For some period of time before their divorce was final, George was involved in a romantic relationship with plaintiff Kelly Matich. In the time since this lawsuit was filed in May 2022, George and Matich have married.

Matich alleges that, as early as July 2021, O'Brien began a campaign of harassment against Matich through email and social media

channels. Matich alleges that O'Brien created a fake LinkedIn profile under Matich's name and image and used it to post defamatory material. Matich alleges that O'Brien later posted partially naked pictures of her and George on Facebook, and that she emailed these and other photographs to multiple senior employees of the company that employed both Matich and George. As a consequence, Matich allegedly experienced online harassment from other friends and family of O'Brien, including a threatening Instagram message from O'Brien's sister, defendant Trisia Sepulveda, and she allegedly received a written warning from her employer and has not received any pay raises or promotions.

The currently operative pleading is the plaintiff's amended complaint. Doc. 23. Certain claims asserted in the amended complaint were dismissed at the pleadings stage. *See Matich v. O'Brien*, No. 3:22-cv-697, 2024 WL 625281 (M.D. Pa. Feb. 14, 2024), Doc. 34; *see also* Order of Feb. 14, 2022, Doc. 35. O'Brien and Sepulveda are the only two defendants who remain. The plaintiff has asserted a claim of intentional infliction of emotional distress ("IIED") against both O'Brien and Sepulveda. She has also asserted several claims against O'Brien alone: (1) defamation; (2) false light invasion of privacy; (3) defamation by

innuendo; (4) identity theft; (5) invasion of privacy; and (6) tortious interference with contractual relationships.

Matich, who is represented by counsel, has moved for summary judgment on all of her surviving claims. Motion, Doc. 54; *see also* Br. in Supp., Doc. 54-1; Revised Statement of Material Facts, Doc. 58.

Although O'Brien and Sepulveda were initially represented by counsel, they are both proceeding pro se at this point in the litigation. Neither has filed any response to the motion for summary judgment.

For the reasons set forth herein, the motion will be granted in part and denied in part.

## I. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all

inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a prima facie showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that prima facie showing has been made does the burden shift to the non-moving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

Here, the plaintiff has moved for summary judgment on all of her claims against the remaining defendants, but the defendants have failed to submit briefs in opposition or any other papers contesting the

plaintiff's motion.[1] The defendants' failure to actively oppose the plaintiff's motion for summary judgment implicates two local rules, which provide that a party who fails to file a brief in opposition to a motion "shall be deemed not to oppose such motion," M.D. Pa. L.R. 7.6, and that all material facts set forth in the movant's statement of material facts "will be deemed to be admitted unless controverted" by a counter-statement of material facts by the non-movant, M.D. Pa. L.R. 56.1.

However, the defendants' failure to respond to the motion does not mean that the plaintiff is automatically entitled to summary judgment. *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). These local rules must be construed and applied in a manner consistent with Rule 56 of the Federal Rules of Civil Procedure. *See id.* at 174. Thus, in the context of a motion for summary judgment, a non-movant's failure to file an opposition brief and counter-statement of material facts is "construed as effecting a waiver of [the non-movant's]

[1] We note that, after the initial time period for responding to the plaintiff's summary judgment motion had expired, we entered an order *sua sponte* granting the defendants an extension of time and admonishing them that, in the absence of timely briefs in opposition, the motion would be deemed unopposed. Doc. 60. Despite this second chance to do so, the defendants have filed no response.

right to controvert the facts asserted by the moving party in the motion for summary judgment or the supporting material accompanying it." *Id.* at 175–76. The moving party must nevertheless establish that, based on the facts set forth in support of its motion, it is entitled to judgment as a matter of law. *See id.*; *see also Lorenzo v. Griffith*, 12 F.3d 23, 28 (3d Cir. 1993); *Miller v. Ashcroft*, 76 Fed. App'x 457, 462 (3d Cir. 2003) ("Even though the applicable [Middle District of Pennsylvania] local rules provide that a summary judgment motion is to be considered unopposed and its statement of material facts admitted where a responsive brief is not timely filed, the [court] was still required to find that the undisputed facts warranted judgment as a matter of law.") (citations omitted).

In other words, in the absence of active opposition by the non-movant, the two-step, burden-shifting analysis that normally applies on summary judgment is abbreviated to just the first step, requiring the moving party to make a *prima facie* showing that it is entitled to summary judgment, based on the undisputed facts of record. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

## II. MATERIAL FACTS[2]

1. On December 1, 2021, the divorce was final between O'Brien and her husband, George O'Brien.[3]

2. Matich and George were subsequently married on February 17, 2024.[4]

3. On July 4, 2021, O'Brien impersonated Matich, creating a fake LinkedIn account under Matich's name and posting messages as if

---

[2] In compliance with Local Rule 56.1, the plaintiff's motion for summary judgment is "accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried," Doc. 58. M.D. Pa. L.R. 56.1. Moreover, the factual statements presented by the plaintiff in support of her motion for summary judgment generally "include references to the parts of the record that support the statements." *Id.*; *see also* Fed. R. Civ. P. 56(c)(1).

[3] This particular statement is supported with citation to Exhibit 3, which appears to have been intended to be the December 2021 divorce decree ending the marriage between O'Brien and George. But the document actually appended as Exhibit 3 is a copy of the August 2013 divorce decree ending Matich's prior marriage to Thomas J. Matich. *See* Pl. Ex. 3, Doc. 58-3. Nevertheless, the record also includes requests for admission that were served on the defendants, but to which the defendants did not respond. Pl. Ex. 2, Doc. 58-2. As a consequence, these requests are deemed admitted. *See* Fed. R. Civ. P. 36(a)(3). Specifically, the defendants are deemed to have admitted that "on December 1, 2021, the divorce was final between O'Brien and her husband, George." Pl. Ex. 2 Admis. No. 1. *See generally* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

[4] Pl. Ex. 5, Doc. 58-5.

they were from Matich.[5]

4. O'Brien, posing as Matich on LinkedIn, wrote under the title "Homewrecker at Diligent Delivery Systems" that "I've been having an affair with my coworker while on business trips."[6]

5. On July 6, 2021, O'Brien, posing as Matich, posted a comment on LinkedIn in response to a post by Diligent, stating: "I love working for this company. You have given me the opportunity to travel this year and found the love of my life while on these trips. We started an affair while we were working on company time and money. He has finally left his family for me and we are so happy together. Thanks to this company I was able to find this man that I love so much . . . ."[7]

6. On December 4, 2021, at 4:39 p.m., O'Brien posted two pictures of George and Matich on her own Facebook profile page.[8] The

---

[5] Pl. Ex. 6, Doc. 58-6; *see also* Pl. Ex. 2 Admis. No. 7.

[6] Pl. Ex. 7, Doc. 58-7; *see also* Pl. Ex. 2 Admis. No. 8.

[7] Pl. Ex. 8, Doc. 58-8; *see also* Pl. Ex. 2 Admis. No. 9.

[8] This particular statement is supported with a citation to a screenshot of O'Brien's Facebook profile page, which includes a single picture of a man and woman engaged in a kiss. Pl. Ex. 4, Doc. 58-4. The plaintiff's factual assertion further characterizes the pictures as showing George and Matich "naked on the upper part of their bodies." Revised Statement of Material Facts ¶ 16. But in this particular picture, which is the only one submitted into the record, the man is clearly wearing a shirt

*(continued on next page)*

posted pictures had been taken by George and left, undeveloped, in his camera.[9]

7. On December 23, 2021, O'Brien sent a lengthy email and several of George's photographs, including ones where Matich is naked

---

and the woman's body is not at all visible—only her head is shown. *See* Pl. Ex. 4; *see also Blackwell-Murray v. PNC Bank*, 963 F. Supp. 2d 448, 464 (E.D. Pa. 2013) (rejecting evidentiary citations that did not support the factual assertions they accompanied).

[9] These statements are supported with citation to the plaintiff's unverified and superseded original complaint in this action. *See* Pl. Ex. 1, Doc. 58-1. While a defendant may properly cite allegations in a plaintiff's complaint, signed by plaintiff's counsel, as these allegations constitute binding judicial admissions by the plaintiff, *see* Fed. R. Civ. P. 56(c)(1)(A); *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 181 (3d Cir. 2008) ("[An] allegation in the [plaintiff's] complaint is a binding judicial admission."), a plaintiff cannot rely on his own *unverified* complaint as competent evidence on summary judgment. *See Tripoli Co. v. Wella Corp.*, 425 F.2d 932, 935 (3d Cir. 1970) (holding that a party cannot rely on allegations of an unverified complaint to demonstrate a genuine issue of material fact); *Mitnik*, 789 F. Supp. at 176 (holding that allegations in an unverified complaint are not sufficient to raise a genuine issue of material fact); *Ratner v. Young*, 465 F. Supp. 386, 389 (D.V.I. 1979) ("A party's unsworn pleadings will not suffice to contest the factual matters offered in support of the motion.") (citing *Tripoli Co.*, 425 F.2d at 935). *See generally Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 443 (3d Cir. 2020) (holding that a *verified* complaint may be considered as an affidavit on summary judgment); *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (noting that a "verified complaint" is one that is signed by the plaintiff personally under penalty of perjury pursuant to 28 U.S.C. § 1746). Nevertheless, the record also includes the defendants' deemed admissions that "George had taken these pictures," Pl. Ex. 2 Admis. No. 4, and "they were undeveloped in his camera," *Id.* Admis. No. 5. *See supra* note 3.

from the waist up, to the top 30 people in the Houston corporate office at Diligent Delivery Systems ("Diligent"), the company that employed both George and Matich.[10]

8. On January 2, 2022, Matich sent a text message telling O'Brien to "[s]top posting my name on your page or else I will get a lawyer."[11]

9. Later that same day, O'Brien posted a screenshot of that text message to her Facebook page, stating: "Just out of the blue!! I have no idea what she is talking about but you do u boo!! Come at me!! Now I got new stuff to post. If you don't want your shit on my page[], stop texting me, bitch!!"[12]

10. In another Facebook post, O'Brien discussed her contentious

[10] *See supra* note 9; *see also* Pl. Ex. 2 Admis. No. 6. The plaintiff's statement of material facts includes several additional statements regarding subsequent events that allegedly occurred at her workplace as a consequence of O'Brien's December 23, 2021, email message. Revised Statement of Material Facts ¶¶ 29–32. But in support, the moving plaintiff has cited only to her unverified and superseded original complaint in this action, *see* Pl. Ex. 1, and to an unverified complaint she filed in another action against her employer, Diligent, Pl. Ex. 12, Doc. 58-12. *See supra* note 9. Thus, we have disregarded these completely unsupported factual assertions.

[11] Pl. Ex. 9, Doc. 58-9.

[12] *Id.*

divorce from George, calling Matich "a professional homewrecking slut," and, after describing her divorce settlement, commented that "[h]ell hath no fury like a woman scorned."[13]

## III. Discussion

### A. Intentional Infliction of Emotional Distress

In Count II of the amended complaint, Matich has asserted an IIED claim against both defendants.

To succeed on an IIED claim under Pennsylvania law, a plaintiff must show that the defendant's conduct was "(1) extreme and outrageous, (2) intentional or reckless, (3) caused emotional distress, and (4) that the distress was severe." *Sarin v. Magee*, 333 F. Supp. 3d 475, 483 (E.D. Pa. 2018).[14] Moreover, "to show that distress is severe, Pennsylvania courts require some physical manifestation of injury." *Id.*; *see also Reedy v.*

---

[13] Pl. Ex. 10, Doc. 58-10. In her statement of material facts, the moving plaintiff has also characterized the "hell hath no fury" statement as confirmation that O'Brien acted with malice. Revised Statement of Material Facts ¶ 27. But whether the defendant acted with malice is not itself a factual assertion, but rather a legal conclusion. *See generally Quinones v. United States*, 492 F.2d 1269, 1273–74 (3d Cir. 1974).

[14] "Although the Third Circuit has predicted that the Pennsylvania Supreme Court will ultimately recognize such a theory, the [Pennsylvania] Supreme Court has yet to find a case that qualifies." *Id.* at 483 n.6 (citation omitted); *see also Pavlik v. Lane Ltd. Tobacco Exps. Int'l*, 135 F.3d 876, 890 (3d Cir. 1998).

*Evanson*, 615 F.3d 197, 232 (3d Cir. 2010) ("[T]o succeed on an intentional infliction of emotional distress claims, [a plaintiff] must show that she suffered 'some type of resulting physical harm due to the defendant's outrageous conduct.'"); *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987) (holding that, assuming an IIED action is even cognizable under Pennsylvania law, "at the very least, evidence of the alleged emotional distress must be supported by competent medical evidence").

Based on the evidence of record, viewed in the light most favorable to the non-moving defendants, the moving plaintiff has failed to make a prima facie showing that she is entitled to summary judgment with respect to her IIED claims against the defendants. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. In particular, she has failed to adduce any evidence—much less competent medical evidence—of the physical manifestation of injury to substantiate her claim of severe emotional distress. Moreover, she has failed to articulate any material facts whatsoever with respect to conduct by defendant Sepulveda.

Accordingly, the plaintiff's motion for summary judgment will be denied with respect to her claims of intentional infliction of emotional

distress.

**B. Defamation and Defamation by Innuendo**

In Count I of the amended complaint, Matich has asserted a claim of defamation against defendant O'Brien, and in Count IV, Matich has asserted a related claim of defamation by innuendo against O'Brien.

To establish a defamation claim under Pennsylvania law, a plaintiff must prove: "(1) the defamatory character of the communications; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion [if it has been raised as a defense]." *Casselli v. City of Phila.*, 54 F. Supp. 3d 368, 376 (E.D. Pa. 2014) (citing 42 Pa. Cons. Stat. Ann. § 8343(a)).

A statement is considered defamatory "if it tends to blacken a person's reputation or expose him to public hatred, contempt, or ridicule, or injure him in his business or profession." *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 477 (E.D. Pa. 2010) (quoting *Joseph v. Scranton Times L.P.*, 959 A.2d 322, 334 (Pa. Super. Ct. 2008)). But "[i]t is not enough that the

victim of the statements be embarrassed or annoyed, he must have suffered the kind of harm which has grievously fractured his standing in the community of respectable society." *Id.* (quoting *Tucker v. Phila. Daily News*, 848 A.2d 113, 124 (Pa. 2004)) (brackets and ellipsis omitted).

"Importantly, only statements of fact, rather than mere expressions of opinion, are actionable under Pennsylvania law." *Id.* (citing *Moore v. Cobb-Nettleton*, 889 A.2d 1262, 1267 (Pa. Super. Ct. 2005)). "In order for an 'opinion' to be deemed capable of defamatory meaning under Pennsylvania law, it must 'reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion.'" *Id.* (quoting *Remick v. Manfredy*, 238 F.3d 248, 261 (3d Cir. 2001)).

In addition, "Pennsylvania courts recognize that a claim for defamation may exist where the words utilized themselves are not defamatory in nature, however, the context in which these statements are issued creates a defamatory implication, i.e., defamation by innuendo." *Id.* (citing several Pennsylvania Supreme Court decisions discussing defamation by innuendo); *see also id.* at 478 ("[C]ourts applying Pennsylvania law have found that even where the complained-of statements are literally true, if, when viewed *in toto*, the accurate

statements create a false implication, the speaker may be liable for creating a defamatory implication.”).

In July 2021, O’Brien used a fake LinkedIn account to pose as Matich describing herself as a “homewrecker” who had an affair with a married coworker while on business trips. Posing as Matich, O’Brien praised Matich’s employer, Diligent, for providing her with the opportunity while on business travel to initiate an affair with her coworker, who had finally left his family for her.

The court previously addressed these claims at the pleadings stage, finding that one factual implication of these posts was that Matich had engaged in a romantic relationship with a married coworker, but that this factual implication was not defamatory because Matich also had admitted to the truth of this factual implication in her litigation filings. *See Matich*, 2024 WL 625281, at *4. In that decision, however, we also found that the LinkedIn posts implied another fact:

> that [Matich] made them. . . . The implication that [Matich] would make these types of posts on her employer’s public LinkedIn page is one that tends to harm her reputation. The posts use [Matich’s] name, so they clearly apply to [Matich] and would be understood by recipients as defamatory and applying to [Matich].

*Id.*

Regardless, an essential element of a defamation claim is the existence of special harm to the plaintiff. "Special harm requires proof of a specific monetary or out-of-pocket loss as a result of the defamation," but Pennsylvania law recognizes an exception to the general rule "where the defamatory statement constitutes slander *per se*." *Keim v. Cnty. of Bucks*, 275 F. Supp. 2d 628, 636 (E.D. Pa. 2003). "Defamation *per se* can be either 'words imputing criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct.'" *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 580 (E.D. Pa. 1999).[15] It is unclear whether the implication that Matich lacked the professional judgment to refrain from publicly posting about an extramarital workplace affair rises to the level of defamation per se.[16] "A statement is defamatory *per se* as

---

[15] Although it appears that adulterous sexual conduct might constitute "serious sexual misconduct" under Pennsylvania law, *see, e.g.*, *Mallory v. S & S Publishers*, 168 F. Supp. 3d 760, 775–76 (E.D. Pa. 2016) (collecting cases suggesting that allegations of adulterous sexual conduct may constitute defamation per se), as we have already noted, the court has previously held at the pleadings stage that this particular factual implication of the LinkedIn posts is not defamatory in light of the plaintiff's admission of its truth.

[16] Once again, the court has already held that the factual implication that Matich engaged in an extramarital workplace affair is not defamatory in light of her admission of its truth. Thus, we limit our consideration here to the allegedly defamatory implication that Matich would have made these LinkedIn posts.

an accusation of business misconduct if it ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business." *Id.* (internal quotation marks omitted). "The statement must be more than mere general disparagement. Typically, business misconduct refers to conduct that is illegal or connotes illegal activity." *I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*, 500 F. Supp. 3d 380, 424–25 (E.D. Pa. 2020) (citation and internal quotation marks omitted).

We need not resolve the issue of whether these LinkedIn posts constitute defamation per se, however, as the plaintiff has failed to point to any evidence of *either* special or general damages. Not only has the plaintiff failed to adduce any evidence of specific monetary or out-of-pocket loss as a result of these social media posts, she has failed to produce any competent evidence of reputational harm. *See Synygy*, 51 F. Supp. 2d at 581–82 (granting summary judgment to defendants where plaintiff failed to produce any evidence of general damages, i.e., proof of reputational harm); *see also Pennoyer v. Marriott Hotel Servs., Inc.*, 324 F. Supp. 2d 614, 619 (E.D. Pa. 2004) ("In determining if a plaintiff has demonstrated any loss to reputation, it must be measured by the

perception of others, rather than that of the plaintiff himself because 'reputation is the estimation in which one's character is held by his neighbors and associates.'"); *Walker v. Grand Cent. Sanitation, Inc.*, 634 A.2d 237, 242 (Pa. Super. Ct. 1993) (recognizing that the Pennsylvania legislature "abrogated the common law rule of truly 'presumed damage' when it codified the prerequisites for recovering in a defamation action").

Based on the evidence of record, viewed in the light most favorable to the non-moving defendants, the moving plaintiff has failed to make a prima facie showing that she is entitled to summary judgment with respect to her defamation claim against defendant O'Brien. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. In particular, she has failed to adduce any evidence of special or general damages.

Accordingly, the plaintiff's motion for summary judgment will be denied with respect to her claims of defamation and defamation by innuendo.

**C. False Light Invasion of Privacy**

In Count III of the amended complaint, Matich has asserted a claim

of false light invasion of privacy against defendant O'Brien.[17]

"The tort of false light invasion of privacy is related to defamation." *Martin v. Finley*, 349 F. Supp. 3d 391, 423 (M.D. Pa. 2018). "Pennsylvania has adopted the definition of false light invasion of privacy from the Restatement (Second) of Torts, which imposes liability on a person who publishes material that is not true, is highly offensive to a reasonable person, and is publicized with knowledge or reckless disregard of its falsity." *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (internal quotation marks omitted).

"It can be difficult to distinguish between the tort of false light invasion of privacy and the tort of defamation. Some commentators have characterized false light as 'the right to be left alone,' whereas defamation protects one's interest in a good reputation, but the lines between them can blur." *Martin*, 349 F. Supp. 3d at 423 (quoting *Fanelle v. Lojack Corp.*, No. 99-4292, 2000 WL 1801270, at *9 (E.D. Pa. Dec. 7, 2000)).

> First, false light requires only proof of the falseness of the communication; it does not require harm to reputation or any other social consequences inherent in

[17] "An action for invasion of privacy is comprised of four distinct torts: (1) intrusion upon seclusion, (2) appropriation of name or likeness, (3) publicity given to private life and (4) publicity placing the person in a false light." *Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 259–60 (3d Cir. 2004).

> a defamation action. Thus, where a publication is false and offensive to plaintiff but might not harm the reputation of plaintiff, plaintiff would have a cause of action for false light, but likely would not be able to proceed with a defamation claim. Second, false light requires scienter, or at least reckless disregard, whereas defamation claims not involving public figures or matters of public concern require only a showing of negligence. Third, the communication must be highly offensive to a reasonable person in a false light claim, while there is no such requirement in a defamation suit. Fourth, false light requires "publicity," meaning widespread dissemination, as opposed to mere "publication" under defamation. Commentators appear to agree that a false light claim presents a higher hurdle for plaintiff to surmount than a defamation claim.

*Id.* at 423–24 (quoting *Fanelle*, 2000 WL 1801270, at *9) (citations omitted).

"Falsity with respect to a defendant's statements . . . carries the same meaning in the defamation and false-light-invasion-of-privacy contexts . . . ." *Graboff*, 744 F.3d at 137. Therefore, in evaluating Matich's false light claim, we must remain cognizant that the fact that Matich engaged in a romantic relationship with a married coworker has been admitted and is not false—*i.e.*, the false communication at issue here is the false impression that *Matich herself* made the social media posts described in the plaintiff's statement of material facts. "The false light in

which the plaintiff is placed must entail such a major misrepresentation of the plaintiff's character, history, activities or beliefs that serious offense may reasonably be expected to be taken." *Mzamane*, 693 F. Supp. 2d at 510–11 (brackets and internal quotation marks omitted). Focusing our attention narrowly on the false impression actually at issue here, while the false attribution of these posts or comments on social media may be subjectively offensive to the plaintiff, we find that a reasonable factfinder could not conclude that the false impression that Matich might post such intemperate or unprofessional material on her own or her employer's LinkedIn pages constitutes such a major misrepresentation of her character, history, activities, or beliefs that it would be highly offensive to a reasonable person. *See, e.g.*, *Solomon v. Nat'l Enquirer*, No. 95-3327, 1996 WL 635384, at *1, *4 (D. Md. June 21, 1996) (newspaper's attribution of fabricated quotation to plaintiff); *Klayman v. Segal*, 783 A.2d 607, 619 (D.C. 2001) (same). *See generally* Restatement (Second) of Torts § 652E cmt. c (1977) ("The plaintiff's privacy is not invaded when the unimportant false statements are made, even when they are made deliberately. It is only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may

reasonably be expected to be taken by a reasonable man in his position, that there is a cause of action for invasion of privacy.”).[18]

Based on the evidence of record, viewed in the light most favorable to the non-moving defendants, the moving plaintiff has failed to make a prima facie showing that she is entitled to summary judgment with respect to her false light invasion of privacy claim against defendant O’Brien. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. In particular, we find that the plaintiff has failed to adduce sufficient evidence for a

[18] We note that the plaintiff has not asserted the obverse privacy tort—an invasion of privacy claim for publicity given to private life—based on these social media posts. *See generally Perloff v. Transamerica Life Ins. Co.*, 393 F. Supp. 3d 404, 409 (E.D. Pa. 2019) (“Pennsylvania courts have adopted section 652D of the Restatement (Second) of Torts, titled ‘Publicity Given to Private Life,’ the elements of which are: (1) publicity, given to (2) private facts, (3) which would be highly offensive to a reasonable person and (4) is not of legitimate concern to the public.”). Under that tort theory, publicity given to a person’s extramarital affair might conceivably be actionable in some circumstances. *See, e.g.*, Restatement (Second) of Torts § 652D illus. 6 (1977). But there is no evidence in the record before us to suggest that the fact of the extramarital relationship between Matich and George was private, rather than public, at the time of these social media posts. *See, e.g.*, *Chisholm v. Foothill Capital Corp.*, 3 F. Supp. 2d 925, 940–41 (N.D. Ill. 1998) (“Because plaintiff and [her paramour, whom she later married,] were open about their romantic relationship, it was not a private fact. . . . Because plaintiff’s relationship with [her paramour] and his divorce were both public facts, plaintiff cannot establish that the fact that their relationship and his previous marriage overlapped was a private fact.”).

reasonable jury to conclude that the false attribution of the defendant's social media posts to her would be highly offensive to a reasonable person.

Accordingly, the plaintiff's motion for summary judgment will be denied with respect to her claim of false light invasion of privacy.

**D. Intrusion Upon Seclusion Invasion of Privacy**

In Count VI of the amended complaint, Matich has asserted a claim of intrusion upon seclusion invasion of privacy against defendant O'Brien.[19]

"Under Pennsylvania law, which follows the Restatement (Second) of Torts, a claim for intrusion upon seclusion arises when one intentionally intrudes, physical or otherwise, upon the solitude or seclusion of another or his private affairs or concerns[,] if the intrusion would be highly offensive to a reasonable person." *Doe v. Hosp. of Univ. of Pa.*, 546 F. Supp. 3d 336, 351 (E.D. Pa. 2021) (internal quotation marks and ellipsis omitted). "Publicity is not required." *Id.*; *see also* Restatement (Second) of Torts § 652B cmt. b (1977) ("The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined.").

---

[19] *See supra* note 17.

Matich has based this claim on O'Brien's emailing of several photographs retrieved from George's camera to 30 senior employees at Diligent's Houston corporate office, where Matich and George worked. These included pictures where Matich is depicted naked from the waist up. Although perhaps relevant to the question of damages, the distribution of these pictures is not relevant to the issue of liability for intrusion upon seclusion.[20] Rather it is the "investigation or examination into [the plaintiff's] private concerns, as by opening [her] private and personal mail, searching [her] safe or [her] wallet, examining [her] private bank account, or compelling [her] by a forged order to permit an inspection of [her] personal documents." Restatement (Second) of Torts § 652B cmt. b (1977). The retrieval of personal photographs of Matich, naked from the waist up, from George's camera clearly constitutes such a highly offensive intrusion. *See Frankhouse v. Clearfield Cnty. Career & Tech. Ctr.*, No. 3:18-cv-180, 2019 WL 1259570, at *12–13 (W.D. Pa. Mar.

[20] We note that the plaintiff has not asserted an invasion of privacy claim for publicity given to private life based on the emailing of these pictures to senior employees at her workplace. *See supra* note 18. In any event, the emailing of these pictures to such a discrete group of people does not appear to satisfy the "publicity" element of this tort theory under Pennsylvania law. *See Perloff*, 393 F. Supp. 3d at 409–410.

19, 2019); *see also Alexander v. F.B.I.*, 971 F. Supp. 603, 608–09 (D.D.C. 1997) (holding that, in the context of an intrusion into seclusion claim, a plaintiff may have a cognizable privacy interest in information created and maintained by a third party based on the plaintiff's role in creation of the information and the understanding she had when deciding to cooperate in creation of the information).

We are satisfied that, based on the undisputed material facts, viewed in the light most favorable to the non-moving defendants, the moving plaintiff has met her burden of making a prima facie showing that she is entitled to summary judgment on this claim. Accordingly, the plaintiff's motion for summary judgment will be granted with respect to her claim for intrusion upon seclusion invasion of privacy, and this claim will be set down for trial on the matter of damages.

**E. Tortious Interference with Contractual Relations**

In Count VII of the amended complaint, Matich has asserted a claim of tortious interference with contractual relations against defendant O'Brien. Matich claims that O'Brien's conduct—impersonating Matich and posting unflattering comments on Diligent's LinkedIn page, and emailing personal, indecent pictures of Matich to numerous senior

employees of Diligent—intentionally interfered with the contractual relationship between Matich and her employer.

Under Pennsylvania law, to establish a tortious interference with contractual relations claim, a plaintiff must prove:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 384 (3d Cir. 2004); *see also Cornell Cos., Inc. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 270 (E.D. Pa. 2007) (quoting *CGB*, 357 F.3d at 384); *Guaranty Towers, LLC v. Cellco P'ship*, No. 1:CV-07-0554, 2008 WL 5378286, at *3 (M.D. Pa. Dec. 22, 2008) (quoting other sources); *Sharp v. Whitman Council, Inc.*, No. 05-CV-4297, 2007 WL 2874058, at *4 (E.D. Pa. Oct. 1, 2007) (quoting *CGB*, 357 F.3d at 384, in the context of an employment relationship). "Thus, a tortious interference claim does not accrue until, at least, the plaintiff suffers injury (i.e., 'actual legal damage') as a result of the defendant's conduct." *CGB*, 357 F.3d at 384;

*see also Guaranty Towers*, 2008 WL 5378286, at *3 (quoting *CGB*, 357 F.3d at 384); *Sharp*, 2007 WL 2874058, at *5 (same).

Here, the moving plaintiff has failed to adduce any competent evidence of injury or legal damage with respect to this contractual employment relationship sustained by Matich as a consequence of O'Brien's conduct.

Based on the evidence of record, viewed in the light most favorable to the non-moving defendants, the moving plaintiff has failed to make a prima facie showing that she is entitled to summary judgment with respect to her tortious interference with contractual relations claim against defendant O'Brien. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. In particular, she has failed to adduce any evidence of actual injury or legal damage.

Accordingly, the plaintiff's motion for summary judgment will be denied with respect to her claim of tortious interference with contractual relations.

**F. Statutory Identity Theft**

In Count V of the amended complaint, Matich has asserted a

statutory claim of civil identity theft against defendant O'Brien.[21]

"Pennsylvania provides a private right of action for victims of identity theft." *Kelly v. Peerstar LLC*, No. 3:18-cv-126, 2020 WL 5077940, at *6 (W.D. Pa. Aug. 26, 2020); *see also McCullagh v. McCullagh*, 826 Fed. App'x 175, 176 n.1 (3d Cir. 2020) ("18 Pa. Cons. Stat. § 4120 defines and criminalizes identity theft. 42 Pa. Cons. Stat. § 8315 establishes a private right of action for victims of identity theft."). "A person commits identity theft if he: (1) possesses or uses, through any means, identifying information of another person; (2) without the consent of that other person; (3) to further any unlawful purpose." *Kelly*, 2020 WL 5077940, at *6 (citing 18 Pa. Cons. Stat. Ann. § 4120(a)). The statute defines "identifying information" as:

> Any document, photographic, pictorial or computer image of another person, or any fact used to establish identity, including, but not limited to, a name, birth date, Social Security number, driver's license number, nondriver governmental identification number, telephone number, checking account number, savings account number, student identification number, employee or payroll number or electronic signature.

---

[21] This court previously ruled that the amended complaint failed to state a common law claim for identity theft. *See Matich*, 2024 WL 625281, at *5.

18 Pa. Cons. Stat. § 4120(f).

Here, the undisputed evidence establishes that defendant O'Brien used Matich's name and image to create a counterfeit LinkedIn account with which she posted statements or comments on the LinkedIn page of Matich's employer, and that she did so without Matich's consent.

But to succeed on this claim, the moving plaintiff must also show that O'Brien used Matich's identifying information to further an "unlawful purpose." *See* 18 Pa. Cons. Stat. Ann. § 4120(a). "An 'unlawful purpose' is a purpose that violates a civil or criminal law. This definition means that the purpose for which an individual uses another's identifying information cannot be merely unscrupulous, it must be unlawful." *Kelly*, 2020 WL 5077940, at *7 (citation omitted); *see also Eagle v. Morgan*, No. 11-4303, 2013 WL 943350, at *9 (E.D. Mar. 12, 2013). On summary judgment, the plaintiff has failed to establish civil liability arising out of the LinkedIn social media posts with respect to her intentional infliction of emotional distress, defamation, false light, or tortious interference claims,[22] and she identifies no other violation of

[22] The plaintiff's intrusion upon seclusion invasion of privacy claim is not based on the counterfeit LinkedIn account.

criminal or civil law.

Based on the evidence of record, viewed in the light most favorable to the non-moving defendants, the moving plaintiff has failed to make a prima facie showing that she is entitled to summary judgment with respect to her statutory identity theft claim against defendant O'Brien. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. In particular, she has failed to adduce any evidence that the defendant used her identifying information to further any unlawful purpose.

Accordingly, the plaintiff's motion for summary judgment will be denied with respect to her claim of identity theft.

**G. Sua Sponte Summary Judgment**

"It has long been established that, under the right circumstances, district courts are entitled to enter summary judgment *sua sponte*." *Gibson v. Mayor of City of Wilmington*, 355 F.3d 215, 222 (3d Cir. 2004). As the Third Circuit has recognized, "courts' resources are limited and they should not be required to use those resources to conduct an unnecessary trial merely because a party entitled to summary judgment in whole or part does not seek that outcome to the litigation." *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 224 (3d Cir. 2009).

"A court, however, must provide the parties with notice of its intention to consider granting summary judgment so that they have an opportunity to marshal evidence on the motion for submission to the court." *Id.* To this end, Rule 56(f)(3) of the Federal Rules of Civil Procedure "specifically authorizes summary judgment on the Court's initiative provided that the Court (1) gives notice and a reasonable time to respond; and (2) identifies for the parties material facts that may not be genuinely in dispute." *Ne. Land Dev., LLC v. City of Scranton*, 946 F. Supp. 2d 376, 386 (M.D. Pa. 2013); *see also* Fed. R. Civ. P. 56(f)(3).

Accordingly, this memorandum and the accompanying order will also serve as notice to the parties that, based on the statement of material facts set out in this memorandum, the court will consider granting summary judgment in favor of the defendants and against the plaintiff with respect to the plaintiff's claims of defamation (Count I), intentional infliction of emotional distress (Count II), false light invasion of privacy (Count III), defamation by innuendo (Count IV), statutory identity theft (Count V), and tortious interference with contractual relations (Count VII). Within a specified time period, the parties will be directed to file any responsive briefs, *see* M.D. Pa. LR 7.6, each of which shall be

accompanied by a separate, short, and concise statement of the material facts, responding to the numbered paragraphs of the court's statement of material facts above, as to which it is contended that there exists a genuine dispute of material fact, *see* M.D. Pa. LR 56.1. Each party will further be permitted to file a reply brief, if desired. *See* M.D. Pa. LR 7.7.

## IV. CONCLUSION

For the foregoing reasons, the moving plaintiff's motion for summary judgment (Doc. 54) will be granted in part and denied in part. The motion will be granted with respect to the plaintiff's claim for intrusion upon seclusion invasion of privacy, and it will be denied with respect to all other claims. The clerk will be directed to enter judgment of liability with respect to the plaintiff's intrusion upon seclusion invasion of privacy claim. The court will further consider on its own initiative whether summary judgment should be entered in favor of the defendants and against the plaintiff with respect to all other claims, after providing the parties with notice and an opportunity to respond. After disposition of the court's sua sponte motion for summary judgment, this matter will be set down for a jury trial with respect to all remaining issues, including the issue of damages with respect to the plaintiff's claim

for intrusion upon seclusion invasion of privacy.

An appropriate order follows.

Dated: September 30, 2026

***s/Joseph F. Saporito, Jr.***
JOSEPH F. SAPORITO, JR.
United States District Judge